# EXHIBIT 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | | |
|---|---|---|
| ROBERT G. LINENWEBER, Individually and on Behalf of All Others Similarly Situated, | § § § § § § § § § § § § § | Civil Action No. 3:20-cv-00408-K |
| Plaintiff, | | CLASS ACTION |
| vs. | | |
| SOUTHWEST AIRLINES CO., et al., | | |
| Defendants. | | |

**LEAD PLAINTIFFS' NOTICE OF RECENT AUTHORITY**

4862-8408-9680.v1

Lead Plaintiffs respectfully submit this Notice of Recent Authority to advise the Court regarding the Fifth Circuit's recent decision in *Oklahoma Firefighters Pension and Retirement System v. Six Flags Entertainment Corporation*, 58 F.4th 195 (5th Cir. 2023), which was issued on January 18, 2023. A copy of the *Six Flags* decision is attached hereto as Exhibit A.

In *Six Flags*, the Fifth Circuit reversed and remanded the dismissal of a securities fraud class action, like this one, alleging violations of the Securities Exchange Act of 1934 and SEC Rule 10b-5. *See Six Flags*, 58 F.4th at 222. In so doing, the Fifth Circuit weighed in on doctrinal issues and pleading standards raised in the parties' briefing on Defendants' Motion to Dismiss the Consolidated Complaint for Violations of the Federal Securities Laws. The Fifth Circuit's decision touched on such pertinent legal issues as: (1) the scope of the puffery doctrine[1]; (2) whether literally true statements can nevertheless create a materially misleading impression[2]; (3) the applicability of the "core operations" theory of scienter in this Circuit[3]; (4) whether a defendant's motive can contribute to a strong inference of scienter[4]; and (5) whether circumstantial evidence can also contribute to a strong inference of scienter.[5]

---

[1]     *See Six Flags*, 58 F.4th at 220; *see also* Plaintiffs' Opposition to Motion to Dismiss, ECF 29 at 23-25.

[2]     *See Six Flags*, 58 F.4th at 217-218; *see also* ECF 29 at 21, 25, 28.

[3]     *See Six Flags*, 58 F.4th at 219; *see also* ECF 29 at 31-33.

[4]     *See Six Flags*, 58 F.4th at 215; *see also* ECF 29 at 33.

[5]     *See Six Flags*, 58 F.4th at 215-216, 219; *see also* ECF 29 at 28-31.

- 1 -

Lead Plaintiffs have limited this Notice to advising the Court of the *Six Flags* decision and portions relevant to the pending briefing.  Lead Plaintiffs, however, reserve the right to file a short reply should Defendants' response be argumentative.  Lead Plaintiffs would also be pleased to provide supplemental briefing concerning the *Six Flags* decision upon request.

DATED:  February 10, 2023                    KENDALL LAW GROUP, PLLC


                                             */s/ Joe Kendall*
                                             JOE KENDALL
                                             Texas State Bar No. 11260700
                                             3811 Turtle Creek Blvd., Suite 1450
                                             Dallas, TX  75219
                                             Telephone:  214/744-3000
                                             214/744-3015 (fax)
                                             jkendall@kendalllawgroup.com

                                             THE LAW OFFICE OF BALON B. BRADLEY
                                             BALON B. BRADLEY (Texas Bar No. 02821700)
                                             11910 Greenville Avenue, Suite 220
                                             Dallas, TX  75243
                                             Telephone:  972/991-1582
                                             972/755-0424 (fax)
                                             balon@bbradleylaw.com

                                             Local Counsel

                                             ROBBINS GELLER RUDMAN
                                               & DOWD LLP
                                             RACHEL L. JENSEN
                                             MATTHEW I. ALPERT
                                             CAROLINE M. ROBERT
                                             655 West Broadway, Suite 1900
                                             San Diego, CA  92101
                                             Telephone:  619/231-1058
                                             619/231-7423 (fax)
                                             rjensen@rgrdlaw.com
                                             malpert@rgrdlaw.com
                                             crobert@rgrdlaw.com

                                             Lead Counsel for Lead Plaintiff

4862-8408-9680.v1

- 3 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was served on all counsel of record on

February 10, 2023 via CM/ECF, in accordance with the Federal Rules of Civil Procedure.

/s/ *Joe Kendall*
JOE KENDALL

4862-8408-9680.v1

# EXHIBIT A

58 F.4th 195
United States Court of Appeals, Fifth Circuit.

OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM, Plaintiff—Appellant,

v.

SIX FLAGS ENTERTAINMENT CORPORATION; James Reid-Anderson; Marshall Barber, Defendants—Appellees.

No. 21-10865
|
FILED January 18, 2023

**Synopsis**
**Background:** Shareholders brought putative class action against theme park operator and two of its executive officers, alleging misstatements and omitted information regarding development of international theme parks, and asserting claims for securities fraud and control person liability. The United States District Court for the Northern District of Texas, Mark T. Pittman, J., 524 F.Supp.3d 501, dismissed complaint for failure to state a claim, and denied shareholders' motion to set aside judgment and amend their complaint. Shareholder appealed.

**Holdings:** The Court of Appeals, Southwick, Circuit Judge, held that:

[1] minimal discount of allegations reflecting assertions of confidential witness was warranted;

[2] statements regarding opening dates of parks that referenced current construction progress were ineligible for protection under safe harbor of Private Securities Litigation Reform Act (PSLRA) for forward-looking statements;

[3] shareholder alleged with particularity that alleged misrepresentations and omissions concerning opening dates of parks were material;

[4] shareholder alleged with particularity strong inference of scienter with respect to alleged misrepresentations and omissions concerning opening dates;

[5] statements regarding delayed opening dates were not eligible for safe harbor protection;

[6] general, abstract statements about prospect of future parks were puffery; and

[7] statements made in context of announcing projected opening dates were not inactionable puffery.

Reversed and remanded.

**Procedural Posture(s):** On Appeal; Motion to Dismiss for Failure to State a Claim; Motion to Set Aside or Vacate; Motion to Amend the Complaint.

West Headnotes (56)

**[1]**  **Federal Courts**  👉 Securities regulation

The Court of Appeals reviews de novo a district court's dismissal of federal securities law claims for failure to state a claim. Fed. R. Civ. P. 12(b)(6).

**[2]**  **Federal Civil Procedure**  Insufficiency in general

**Federal Civil Procedure**  Matters deemed admitted;  acceptance as true of allegations in complaint

A complaint will survive a motion to dismiss for failure to state a claim if, accepting its factual allegations as true, the complaint plausibly states a claim for relief. Fed. R. Civ. P. 12(b)(6).

**[3]**  **Securities Regulation**  Manipulative, Deceptive or Fraudulent Conduct

To state § 10(b) and Rule 10b-5 claim, plaintiff must allege: (1) material misrepresentation or omission; (2) scienter; (3) connection with purchase or sale of security; (4) reliance; (5) economic loss; and (6) causal connection between material misrepresentation and loss. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b–5.

**[4]**  **Federal Civil Procedure**  Fraud, mistake and condition of mind

A complaint alleging securities fraud must meet the heightened pleading requirements for fraud claims. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); Fed. R. Civ. P. 9(b).

**[5]**  **Securities Regulation**  Pleading

The heightened pleading requirements of the Private Securities Litigation Reform Act (PSLRA) apply to securities fraud claims. Securities Exchange Act of 1934 §§ 10(B), 21D, 15 U.S.C.A. §§ 78j(b), 78u-4(b).

**[6]**  **Federal Courts**  Altering, amending, modifying, or vacating judgment or order;  proceedings after judgment

Denials of postjudgment motions are reviewed for abuse of discretion.

**[7]**  **Federal Civil Procedure**  Discretion of Court

**Federal Civil Procedure**  Form and sufficiency of amendment;  futility

**Federal Civil Procedure**  Relief from Judgment

**Federal Civil Procedure**  Discretion of court

When considering motions to set aside judgment and for leave to amend, district courts are afforded broad discretion, and such motions are properly denied on basis of undue delay or futility. Fed. R. Civ. P. 59(e).

**[8]**  **Federal Civil Procedure**  Matters considered

Shareholder did not waive its opposition to summary judgment arguments by theme park operator and two of its executive officers that numerous statements in shareholder's complaint were inactionable as securities fraud, even though shareholder did not expressly cite every relevant statement in its opposition, since shareholder's opposition adequately addressed defendants' arguments concerning subject statements.

**[9]** **Federal Courts** 🔑 Failure to mention or inadequacy of treatment of error in appellate briefs

Shareholder waived on appeal argument that, under heightened Private Securities Litigation Reform Act (PSLRA) pleading standard, district court improperly discounted allegations based on assertions from confidential witness when dismissing securities fraud complaint for failure to state a claim, where shareholder made no argument as to why district court's conclusion was wrong as to this confidential witness, despite fully briefing why district court improperly discounted allegations based on assertions from another confidential witness. Securities Exchange Act of 1934 §§ 10(b), 21D, 15 U.S.C.A. §§ 78j(b), 78u-4(b).

**[10]** **Securities Regulation** 🔑 Pleading

Under the heightened Private Securities Litigation Reform Act (PSLRA) pleading standard, courts must weigh the strength of plaintiffs' favored inference in comparison to other possible inferences. Securities Exchange Act of 1934 § 21D, 15 U.S.C.A. § 78u-4(b).

**[11]** **Securities Regulation** 🔑 Pleading

The court's process under the heightened Private Securities Litigation Reform Act (PSLRA) pleading standard in weighing the strength of plaintiffs' favored inference in comparison to other possible inferences is obstructed when the witness is anonymous, so courts must apply a discount to confidential witness allegations. Securities Exchange Act of 1934 § 21D, 15 U.S.C.A. § 78u-4(b).

**[12]** **Securities Regulation** 🔑 Scienter

**Securities Regulation** 🔑 Misrepresentation

Private Securities Litigation Reform Act (PSLRA) imposes a particularity pleading requirement on all allegations, whether offered in support of a statement's falsity or a defendant's scienter. Securities Exchange Act of 1934 § 21D, 15 U.S.C.A. § 78u-4(b).

**[13]** **Securities Regulation** 🔑 Scienter

**Securities Regulation** 🔑 Misrepresentation

A court's analysis under the heightened Private Securities Litigation Reform Act (PSLRA) pleading standard regarding the discount of confidential witnesses' allegations in a securities fraud complaint applies when evaluating both material misrepresentations and scienter. Securities Exchange Act of 1934 §§ 10(b), 21D, 15 U.S.C.A. §§ 78j(b), 78u-4(b).

**[14]** **Securities Regulation** 🔑 Pleading

In regard to the requirement under the heightened Private Securities Litigation Reform Act (PSLRA) pleading standard that courts must apply a discount to confidential witness allegations, "discount" does not mean unfettered discretion to discard, but instead, the degree of discounting depends on the circumstances involved. Securities Exchange Act of 1934 § 21D, 15 U.S.C.A. § 78u-4(b).

**[15]** **Securities Regulation** 🔑 Pleading

In performing the analysis under the heightened Private Securities Litigation Reform Act (PSLRA) pleading standard regarding the discount of confidential witnesses' allegations, courts may rely on assertions from confidential sources in securities fraud cases if the person is described in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged. Securities Exchange Act of 1934 § 21D, 15 U.S.C.A. § 78u-4(b).

[16]    **Securities Regulation**  ⚷  Pleading

When determining under the heightened Private Securities Litigation Reform Act (PSLRA) pleading standard how much to discount confidential witness allegations in a securities fraud complaint, a court must consider the details in the description of the source and whether those details substantiate that the source has the necessary knowledge. Securities Exchange Act of 1934 § 21D, 15 U.S.C.A. § 78u-4(b).

[17]    **Securities Regulation**  ⚷  Pleading

Under the heightened Private Securities Litigation Reform Act (PSLRA) pleading standard regarding the discount of confidential witnesses' allegations in a securities fraud complaint, as with complaints more generally, the important assertions by a confidential witness must be factual and not mere conclusory statements. Securities Exchange Act of 1934 § 21D, 15 U.S.C.A. § 78u-4(b).

[18]    **Securities Regulation**  ⚷  Pleading

Minimal discount of allegations reflecting assertions of confidential witness in general in shareholder's securities fraud complaint against theme park operator and two of its executives alleging misstatements and omitted information regarding development of international theme parks was warranted under heightened Private Securities Litigation Reform Act (PSLRA) pleading standard, where complaint referred to witness's unique and significant corporate title, complaint detailed that witness was "responsible for overseeing" construction of subject parks and reporting internally on progress, worked onsite, and attended meetings with relevant personnel, and witness's account was supported by photo of project site showing essentially no construction. Securities Exchange Act of 1934 §§ 10(b), 21D, 15 U.S.C.A. §§ 78j(b), 78u-4(b).

More cases on this issue

[19]    **Securities Regulation**  ⚷  Pleading

Under the heightened Private Securities Litigation Reform Act (PSLRA) pleading standard regarding the discount of confidential witnesses' allegations in a securities fraud complaint, a confidential witness may be adequately described, as would support a minimal discount, but still fail to establish the falsity of a statement or to give rise to a strong inference of scienter. Securities Exchange Act of 1934 §§ 10(b), 21D, 15 U.S.C.A. §§ 78j(b), 78u-4(b).

[20]    **Securities Regulation**  ⚷  Pleading

For analytical purposes under the heightened Private Securities Litigation Reform Act (PSLRA) pleading standard regarding the discount of confidential witnesses' allegations in a securities fraud complaint, it is important to distinguish deficiencies relating to the content of allegations from those relating to their form. Securities Exchange Act of 1934 § 21D, 15 U.S.C.A. § 78u-4(b).

**[21]    Securities Regulation** 🔑 Pleading

In case of confidential witness allegations, court applies particularity pleading requirement of Private Securities Litigation Reform Act (PSLRA) by evaluating detail provided by confidential sources, sources' basis of knowledge, reliability of sources, corroborative nature of other facts alleged, including from other sources, coherence and plausibility of allegations, and similar indicia; if anonymous source allegations are found wanting with respect to these criteria, then court must discount them steeply. Securities Exchange Act of 1934 § 21D, 15 U.S.C.A. § 78u-4(b).

**[22]    Securities Regulation** 🔑 Pleading

Minimal discount of allegations reflecting assertions of confidential witness concerning financial health of foreign real estate developer in shareholder's securities fraud complaint against theme park operator and two of its executives alleging misstatements and omitted information regarding development of international theme parks was warranted under heightened Private Securities Litigation Reform Act (PSLRA) pleading standard; complaint alleged that witness was responsible for overseeing construction of subject parks and ensuring developer was building parks correctly and safely, such that witness would have knowledge of developer's lack of payments to vendors, even if reason for default was not known, and that witness raised concerns about lack of construction directly with developer. Securities Exchange Act of 1934 §§ 10(b), 21D, 15 U.S.C.A. §§ 78j(b), 78u-4(b).

More cases on this issue

**[23]    Federal Civil Procedure** 🔑 Stockholders', investors, and other class actions

Each statement that purportedly benefits from the safe harbor provision in the Private Securities Litigation Reform Act (PSLRA) for forward-looking statements must be addressed individually on a motion to dismiss for failure to state a claim. Securities Exchange Act of 1934 § 21E, 15 U.S.C.A. § 78u-5(c)(1)(A).

**[24]    Securities Regulation** 🔑 Forecasts, estimates, predictions or projections

Statements during earnings calls regarding scheduled opening dates of international theme parks that referenced current construction progress were ineligible for protection under safe harbor of Private Securities Litigation Reform Act (PSLRA) for forward-looking statements, even though portion of statements concerning construction deadline was future projection, since crux of shareholder's securities fraud claim was that investors were misled about theme park operator's present construction progress. Securities Exchange Act of 1934 § 21E, 15 U.S.C.A. § 78u-5(c)(1)(A).

More cases on this issue

**[25]    Securities Regulation** 🔑 Forecasts, estimates, predictions or projections

Statements during earnings calls regarding scheduled opening dates of international theme parks that did not reference current construction progress were not entitled to protection under safe harbor of Private Securities Litigation Reform Act (PSLRA) for forward-looking statements, even though statements qualified as forward-looking statements, since cautionary statements at beginning of each earnings call and in accompanying Securities and Exchange Commission (SEC) Form 10-K annual reports were too generic to constitute meaningful cautionary language and were not specifically connected to forward-looking statements, and shareholder sufficiently alleged that statements were made with actual knowledge of their misleading qualities. Securities Exchange Act of 1934 § 21E, 15 U.S.C.A. § 78u-5(c)(1)(A).

More cases on this issue

**[26]    Securities Regulation**  ☞ Misrepresentation

**Securities Regulation**  ☞ Nondisclosure

To allege material misrepresentation or omission as basis of securities fraud claim with sufficient particularity under rule setting forth heightened pleading standard for claims of fraud or mistake and Private Securities Litigation Reform Act (PSLRA), complaint must specify, among other things, each allegedly misleading statement and explain why it is misleading. Securities Exchange Act of 1934 § 21D, 15 U.S.C.A. § 78u-4(b)(1); Fed. R. Civ. P. 9(b).

**[27]    Securities Regulation**  ☞ Materiality of violation

Shareholder alleged with particularity that alleged misrepresentations and omissions in earnings calls concerning scheduled opening dates of international theme parks were material, as required under Private Securities Litigation Reform Act (PSLRA) to state securities fraud claims against theme park operator, where shareholder alleged that at time statements were made foreign real estate developer had not commissioned "fundamental blueprints" necessary to begin construction of park infrastructure, such as roads, canals, pavilions, and buildings, and was unable to pay vendors constructing roller coasters and rides, which were made to order and required years of lead time and planning. Securities Exchange Act of 1934 §§ 10(b), 21D, 15 U.S.C.A. §§ 78j(b), 78u-4(b)(1); Fed. R. Civ. P. 9(b).

More cases on this issue

**[28]    Securities Regulation**  ☞ Pleading

A securities fraud plaintiff generally need not plausibly plead future deadlines are categorically impossible in order to allege materiality under the particularity standard of the Private Securities Litigation Reform Act (PSLRA). Securities Exchange Act of 1934 § 21D, 15 U.S.C.A. § 78u-4(b)(1).

**[29]    Securities Regulation**  ☞ Scienter

Under heightened pleading requirement of Private Securities Litigation Reform Act (PSLRA), securities fraud complaint adequately pleads scienter by alleging facts that support defendant acted with intent to deceive, manipulate, or defraud or severe recklessness. Securities Exchange Act of 1934 § 21D, 15 U.S.C.A. § 78u-4(b)(2).

**[30]    Securities Regulation**  ☞ Scienter

In assessing whether a securities fraud complaint has alleged scienter under the particularity standard of the Private Securities Litigation Reform Act (PSLRA), a court first accepts all factual allegations in the complaint as true, then considers the complaint's allegations in their entirety, and, third, considers plausible inferences that both oppose and support a strong inference of scienter. Securities Exchange Act of 1934 § 21D, 15 U.S.C.A. § 78u-4(b)(2).

**[31]    Securities Regulation**  ☞ Scienter

An "inference of scienter," within the meaning of the heightened pleading standard under the Private Securities Litigation Reform Act (PSLRA) for securities fraud claims, must be cogent and compelling, not merely reasonable or permissible. Securities Exchange Act of 1934 § 21D, 15 U.S.C.A. § 78u-4(b)(2).

**[32]    Federal Civil Procedure**  ☞ Stockholders', investors, and other class actions

Where there are competing inferences that establish or negate the scienter element of a securities fraud claim, a tie favors the plaintiff on a motion to dismiss for failure to state a claim. Securities Exchange Act of 1934 § 21D, 15 U.S.C.A. § 78u-4(b)(2).

**[33]    Securities Regulation** 🔑 Forecasts, estimates, predictions or projections

Liability under the Private Securities Litigation Reform Act (PSLRA) for a forward-looking statement must satisfy a more demanding standard than for current statements; liability arises only upon proof of knowing falsity because the provision explicitly specifies that a defendant must have made the statement with actual knowledge of its falsity. Securities Exchange Act of 1934 § 21D, 15 U.S.C.A. § 78u-4(b)(2).

**[34]    Securities Regulation** 🔑 Scienter

Shareholder alleged with particularity strong inference of scienter, as required under Private Securities Litigation Reform Act (PSLRA) to state securities fraud claims against theme park operator based on alleged misrepresentations concerning opening dates of international theme parks, where shareholder alleged that executive officers were particularly motivated to increase high-margin international licensing deals to achieve certain financial target tied to significant bonuses because revenue recognition occurred independently of parks' long-term success, and that confidential witness compiled reports containing information about lack of construction progress for senior vice president to present to chief executive officer (CEO) and board of directors. Securities Exchange Act of 1934 §§ 10(b), 21D, 15 U.S.C.A. §§ 78j(b), 78u-4(b)(2); Fed. R. Civ. P. 9(b).

More cases on this issue

**[35]    Securities Regulation** 🔑 Scienter

To demonstrate motive, as required to plead scienter in securities fraud action, plaintiffs must show concrete benefits that could be realized by one or more of false statements and wrongful nondisclosures alleged. Securities Exchange Act of 1934 § 21D, 15 U.S.C.A. § 78u-4(b)(2).

**[36]    Securities Regulation** 🔑 Scienter

Performance-based compensation can establish motive, as required to plead scienter in a securities fraud action, in circumstances when the potential bonus is extremely high and other allegations support an inference of scienter. Securities Exchange Act of 1934 § 21D, 15 U.S.C.A. § 78u-4(b)(2).

**[37]    Securities Regulation** 🔑 Scienter

Motive alone is generally insufficient to support a strong inference of scienter in securities fraud action. Securities Exchange Act of 1934 § 21D, 15 U.S.C.A. § 78u-4(b)(2).

**[38]    Securities Regulation** 🔑 Pleading

The Private Securities Litigation Reform Act (PSLRA) was enacted, in part, to prevent abusive, frivolous strike suits, not to raise the pleading burdens to such a level that facially valid claims must be routinely dismissed for failure to state a claim. Securities Exchange Act of 1934, § 21D, 15 U.S.C.A. § 78u-4.

**[39]    Securities Regulation** 🔑 Scienter

A confidential witness does not need to be a fly on every relevant wall, or directly deliver every relevant presentation, for a securities fraud plaintiff to plead allegations supporting an inference of scienter based on internal corporate reports. Securities Exchange Act of 1934 § 21D, 15 U.S.C.A. § 78u-4(b)(2).

**[40]    Securities Regulation** 🔑 Forecasts, estimates, predictions or projections

Statements during earnings calls regarding delayed opening dates of international theme parks were not eligible for protection under safe harbor of Private Securities Litigation Reform Act (PSLRA) for forward-looking statements; statements about foreign real estate developer, including that it continued to pay for parks' development and that financing was in place, concerned present information about developer's financial condition and ability to finance parks, and statements about new, future deadlines were accompanied by reassurances about present progress towards those deadlines. Securities Exchange Act of 1934 § 21E, 15 U.S.C.A. § 78u-5(c)(1)(A).

More cases on this issue

**[41]    Securities Regulation** 🔑 Matters to Be Disclosed

Shareholder adequately alleged statements during earnings calls concerning foreign real estate developer contained material omissions about developer's true financial state, as required under Private Securities Litigation Reform Act (PSLRA) to state securities fraud claims against theme park operator; shareholder alleged that operator told investors that developer had a "lot of assets," continued to pay, and financing for parks was in place, and failed to disclose that developer was firing its employees, underpaying its workers, had stopped construction, and had "zero funds" to finance project. Securities Exchange Act of 1934 §§ 10(b), 21D, 15 U.S.C.A. §§ 78j(b), 78u-4(b)(1); Fed. R. Civ. P. 9(b).

More cases on this issue

**[42]    Securities Regulation** 🔑 Misrepresentation

Shareholder alleged with particularity that statements during earnings calls about ongoing construction progressing for international theme parks were material, as required under Private Securities Litigation Reform Act (PSLRA) to state securities fraud claims against theme park operator, even if some construction was ongoing; shareholder alleged that confidential witness sent letter to senior vice president in human resources, who reported directly to chief executive officer (CEO), expressing concern that projects were "perhaps irreversibly off-track" and a "mess," and that witness had "never seen such a poorly planned project set into motion in this industry." Securities Exchange Act of 1934 §§ 10(b), 21D, 15 U.S.C.A. §§ 78j(b), 78u-4(b)(1); Fed. R. Civ. P. 9(b).

More cases on this issue

**[43]    Securities Regulation** 🔑 Matters to Be Disclosed

Disclosure required by securities laws is measured not by literal truth, but by ability of statements to accurately inform rather than mislead prospective buyers.

**[44]    Securities Regulation** 🔑 Misrepresentation

Shareholder did not allege with particularity materiality of statement during earnings call denying any recent material change in timeline for opening international theme parks, and thus, failed to state securities fraud claims against theme park operator based on such statement; full exchange on call included admissions by chief executive officer (CEO)

there was "very high likelihood going forward" that changes in timing of park openings would occur and that it was "unrealistic" to think current timelines would hold. Securities Exchange Act of 1934 §§ 10(b), 21D, 15 U.S.C.A. §§ 78j(b), 78u-4(b)(1); Fed. R. Civ. P. 9(b).

More cases on this issue

**[45]    Securities Regulation** 🔑 Scienter

To show severe recklessness, as basis for strong inference of scienter, a securities fraud plaintiff must adequately plead highly unreasonable conduct representing an extreme departure from the standards of ordinary care. Securities Exchange Act of 1934 § 21D, 15 U.S.C.A. § 78u-4(b)(2).

**[46]    Securities Regulation** 🔑 Scienter

Shareholder alleged with particularity strong inference of scienter, as required under Private Securities Litigation Reform Act (PSLRA) to state securities fraud claims against theme park operator based on alleged misrepresentations and omissions concerning delayed opening dates of international theme parks, even though executive officers' loss of opportunity to receive extraordinary bonuses removed one pecuniary motive; shareholder alleged that confidential witness sent letter to senior vice president in human resources, who reported directly to chief executive officer (CEO), about disastrous state of parks and submitted regular reports to operator's president, and that parks were important aspect of operator's future growth prospects and financial metrics. Securities Exchange Act of 1934 §§ 10(b), 21D, 15 U.S.C.A. §§ 78j(b), 78u-4(b)(2); Fed. R. Civ. P. 9(b).

More cases on this issue

**[47]    Securities Regulation** 🔑 Scienter

Presence or absence of pecuniary motive is not dispositive with respect to establishing a strong inference of scienter required for securities fraud under Private Securities Litigation Reform Act (PSLRA). Securities Exchange Act of 1934 § 21D, 15 U.S.C.A. § 78u-4(b)(2).

**[48]    Securities Regulation** 🔑 Scienter

Generally, officer's position with company does not suffice to infer scienter in securities fraud action, but special circumstances, taken together with officer's position, may support strong inference of scienter, including (1) the company's size; (2) whether the transaction at issue was critical to the company's continued vitality; (3) whether the misrepresented information would have been readily apparent to the speaker; and (4) whether the defendant's statements were internally inconsistent with one another. Securities Exchange Act of 1934 § 21D, 15 U.S.C.A. § 78u-4(b)(2).

**[49]    Securities Regulation** 🔑 Forecasts, estimates, predictions or projections

Securities fraud cannot be proved by hindsight.

**[50]    Securities Regulation** 🔑 Scienter, Intent, Knowledge, Negligence or Recklessness

Executive resignations are unavailing as proof of a commission of securities fraud and do not contribute to a strong inference of scienter.

**[51]**   **Securities Regulation** 🔑 Forecasts, estimates, predictions or projections

Generalized positive statements about company's progress are not basis for securities fraud liability. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b).

**[52]**   **Securities Regulation** 🔑 Facts or opinions

Statements are nonactionable puffery, for purposes of securities fraud claim, when they are of vague and optimistic type and contain no concrete factual or material misrepresentation. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b).

**[53]**   **Securities Regulation** 🔑 Facts or opinions

General, abstract statements about prospect of future international theme parks were puffery, and thus, inactionable as securities fraud; statements such as theme park operator would not be stopping at ten parks and that 20 parks was possible were vague, optimistic generalizations that would not convey to a reasonable investor such aspirations were guaranteed or even likely. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b).

More cases on this issue

**[54]**   **Securities Regulation** 🔑 Forecasts, estimates, predictions or projections

Statements by theme park operator made in context of announcing projected opening dates for international theme parks were not inactionable puffery precluding securities fraud claim; statements that timing of parks remained exactly same as previously discussed or that parks were progressing nicely confirmed projections previously provided and conveyed precise information on which investors were likely to rely when valuing operator, particularly because revenue recognition for parks depended on projected opening dates. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b).

More cases on this issue

**[55]**   **Securities Regulation** 🔑 Financial or periodic reports;  accounting data and valuations

Shareholder stated securities fraud claim against theme park operator based on improperly recognizing revenue on international theme parks in its financial statements and failing to comply with generally accepted accounting principles (GAAP); shareholder alleged operator made misleading statements regarding parks' construction progress, that revenue depended on projected opening dates, and that operator made downward revenue adjustment due to overstatement of revenue. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b).

More cases on this issue

**[56]**   **Federal Courts** 🔑 Altering, amending, modifying, or vacating judgment or order;  proceedings after judgment

The Court of Appeals reviews a district court's denial of a motion to set aside judgment dismissing complaint for failure to state a claim in order to amend complaint for abuse of discretion, in light of the limited discretion of the rule governing amendments before trial. Fed. R. Civ. P. 15(a), 59(e).

**\*203**  Appeal from the United States District Court for the Northern District of Texas, USDC No. 4:20-CV-201, Mark Timothy Pittman, U.S. District Judge

**Attorneys and Law Firms**

Katherine M. Sinderson, Adam Hollander, Christopher Ryan Miles, John Rizio-Hamilton, Bernstein Litowitz Berger & Grossmann, L.L.P., New York, NY, Lewis T. LeClair, McKool Smith, P.C., Dallas, TX, for Plaintiff—Appellant.

Sandra Goldstein, Stefan H. Atkinson, Dan Cellucci, Kirkland & Ellis, L.L.P., New York, NY, Jeremy Alan Fielding, Esq., Kirkland & Ellis, L.L.P., Dallas, TX, for Defendants—Appellees.

Before Southwick, Haynes, and Higginson, Circuit Judges.

**Opinion**

Leslie H. Southwick, Circuit Judge:

 **\*204**  A labor-union retirement-system purchaser of Six Flags Entertainment Corporation common stock brought suit against the company and two of its executive officers. That Purchaser alleges that Six Flags executives made material misrepresentations and omissions regarding the development of several Six Flags theme parks in China, thereby violating federal securities laws. The district court dismissed the claims with prejudice for failure to state a claim. We REVERSE and REMAND for further proceedings consistent with this opinion.

FACTUAL AND PROCEDURAL BACKGROUND

Six Flags Entertainment Corporation is the world's largest regional theme park operator, with over 24 parks across North America.[1] In an effort to increase its earnings before interest, taxes, depreciation, and amortization ("EBITDA"), Six Flags entered into licensing agreements with international partners to build theme parks abroad. Under the agreements, Six Flags received initial fees from the international partners during the parks' development, with plans to receive substantial, continuing licensing and management fees after the parks opened. The company stated that international licensing was one of its "biggest opportunities," as it required "no capital investment" and yielded "80% to 90% EBITDA margins," notably higher than typical operating revenue margins.

In 2014, Six Flags announced a partnership with Riverside Investment Group, a Chinese real estate developer, to develop multiple Six Flags-branded theme parks in China. Between 2015 and May 2018, Six Flags announced 11 China parks at three locations: Zhejiang, with three parks on track to open by late 2019; Chongqing, with four parks to open in 2020; and Nanjing, with four parks to open in 2021. The parks were complex projects that involved partnerships with local Chinese governments and the services of outside designers, consultants, engineers, and ride vendors. Together, the parks were projected to contribute, at minimum, $60 million to Six Flags' annual EBITDA post-opening.

According to the complaint, from the beginning of the Putative Class Period,[2] Six Flags and individual Defendants James Reid-Anderson (then-Executive Chairman and Chief Executive Officer) and Marshall Barber (then-Chief Financial Officer), misled investors by projecting unrealistic or impossible timelines for the China park openings. The complaint relies largely on information from a former Six Flags employee (Former Employee 1, or "FE1").[3]  **\*205**  From May 2018 to September 2019, FE1 was Director of International Construction and Project Management for what the complaint and parties refer to as Six Flags International, presumably an affiliate of the corporate defendant. FE1 was responsible for overseeing the construction of the China parks and reporting on their progress internally at Six Flags. The complaint states that FE1, from his arrival in China in May 2018, believed it was "obvious" the parks could not open on schedule because the Chinese development partner, Riverside, was unable or refused to fund the theme park rides, had not commissioned the necessary blueprints, and had barely

begun construction. The complaint also alleges that Riverside had fallen behind on making licensing payments to Six Flags by August 2018.

Throughout 2018, Defendants maintained publicly that the China parks were "progressing nicely towards their anticipated opening dates." In October 2018, Defendant Barber announced on an earnings call that the Zhejiang park opening date had shifted back from late 2019 to "the first of 2020," but that the Chongqing parks and Nanjing parks were still on time, slated for 2020 and 2021, respectively.

In February 2019, however, the company admitted to investors that the opening of the China parks would be delayed 6-12 months due to "macroeconomic events" affecting Riverside's ability to finance the parks, resulting in a negative revenue adjustment of $15 million for the fourth quarter of 2018. [4] As a result, Six Flags did not reach its target EBITDA of $600 million for fiscal year 2018, and Defendants failed to earn large equity bonuses. Despite this setback, Six Flags maintained that construction in China was "progressing" and that Riverside was "fully committed to developing and opening these parks." A few weeks later, on March 7, 2019, Six Flags announced that Reid-Anderson would retire from his position as CEO by February 28, 2020.

In 2019, Defendants began speaking more cautiously about the parks but still assured investors that there was "ongoing building" and "no delays" to the new opening timelines. In October 2019, however, the Company admitted the China parks could be further delayed, disclosing there was "a very high likelihood going forward that we will see changes in the timing of the park openings."

On January 10, 2020, Six Flags disclosed that Riverside had defaulted on its payment obligations, admitting this could lead "to the termination of all Six-Flags-branded projects in China." As a result, Six Flags expected "a negative $1 million revenue adjustment" and "aggregate one-time charges of approximately $10 million." On February 20, 2020, Six Flags announced the termination of its agreements with Riverside and that Barber would retire as Chief Financial Officer. Throughout the Class Period, Six Flags' stock declined from a high of $73.38 on June 22, 2018, to close at $31.89 on February 20, 2020, the company's lowest stock price in over seven years.

 **\*206** In February 2020, Electrical Workers Pension Fund, Local 103, I.B.E.W. filed suit, alleging that Six Flags and the individual defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. The district court appointed Oklahoma Firefighters Pension and Retirement System ("Oklahoma Firefighters") as Co-Lead Plaintiff on May 8, 2020. Plaintiffs filed the operative complaint on July 2, 2020. In August 2020, Defendants moved to dismiss for failure to state a claim. The district court held the complaint failed to make adequate allegations of material misrepresentations or omissions, or a strong inference of scienter, and, therefore, failed to plead an actionable Section 10(b) claim or state a Section 20(a) claim. *Elec. Workers Pension Fund, Loc. 103, I.B.E.W. v. Six Flags Ent., Corp.*, 524 F. Supp. 3d 501, 533–534, 537–538 (N.D. Tex. 2021). The court dismissed the case with prejudice. *Id.*

Plaintiffs moved to set aside the judgment and amend their complaint. They later moved to file a supplemental brief in support of their motion in order to add details of a Securities and Exchange Commission ("SEC") investigation into Six Flags' partnership with Riverside and the China parks. [5] Both motions were denied. Oklahoma Firefighters alone appealed from the final judgment.

## DISCUSSION

Plaintiff seeks reversal of the district court's two primary rulings: the dismissal of the complaint and the refusal to allow post-judgment amendments to the complaint. As to the dismissal, Plaintiff argues it sufficiently pled (1) actionable misstatements, (2) scienter, and (3) control-person liability. As to the failure to allow an amendment, Plaintiff alleges it timely and sufficiently corrected the claimed deficiencies in the complaint.

 **[1]** **[2]** "We review a district court's dismissal of federal securities law claims under Rule 12(b)(6) *de novo*." *Owens v. Jastrow*, 789 F.3d 529, 535 (5th Cir. 2015). A "complaint will survive a Rule 12(b)(6) motion to dismiss if, accepting its factual allegations

as true, the complaint plausibly states a claim for relief." *Loc. 731 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Diodes, Inc.*, 810 F.3d 951, 956 (5th Cir. 2016).

 **[3]** The complaint alleges Defendants violated Section 10(b) of the Securities Exchange Act and SEC Rule 10b-5, and that the individual Defendants violated Section 20(a) of the Act. To state a Section 10(b) and Rule 10b-5 claim, a plaintiff must allege: "(1) a material misrepresentation or omission; (2) scienter (a 'wrongful state of mind'); (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) a 'causal connection between the material misrepresentation and the loss.' " *Mun. Emps.' Ret. Sys. of Mich. v. Pier 1 Imports, Inc.*, 935 F.3d 424, 429 (5th Cir. 2019) (quoting *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341–42, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005)).

 **[4]** **[5]** A complaint alleging a violation of Section 10(b) of the Securities Exchange Act must meet the heightened pleading requirements for fraud claims under Federal Rule of Civil Procedure 9(b), which requires that the complaint "state all allegations of fraud with particularity." *Owens*, 789 F.3d at 535. The heightened pleading requirements of the Private Securities **\*207** Litigation Reform Act ("PSLRA") also apply. Under that Act, the plaintiffs must "first, allege with particularity why each one of defendants' representations or omissions was 'misleading' under 15 U.S.C. § 78u–4(b)(1) and, second, allege with particularity those facts giving rise to a 'strong inference' that the defendant acted with the required state of mind under 15 U.S.C. § 78u–4(b)(2)." *Spitzberg v. Hous. Am. Energy Corp.*, 758 F.3d 676, 683 (5th Cir. 2014).

 **[6]** **[7]** Denials of post-judgment motions are reviewed for an abuse of discretion. *Schiller v. Phys. Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003). When considering Rule 59(e) motions to set aside judgment and for leave to amend, district courts are afforded broad discretion; such motions are properly denied on the basis of undue delay or futility. *Id.*

 **[8]** We will analyze the arguments about the sufficiency of this complaint principally by grouping the allegations into two time periods, 2018 and 2019, in which the supposed material misstatements were made. For each section, we consider as relevant (1) whether the statements were forward-looking and protected by the safe harbor; (2) whether the statements were material misstatements or omissions; and (3) if scienter was properly alleged. [6]

Before beginning our examination, though, we consider a matter that applies across all time periods: whether the allegations based on the assertions of an anonymous source, which are key to most of the complaint, should have been significantly discounted.

### I. Discounting former employee allegations

 **[9]** **[10]** **[11]** **[12]** **[13]** A significant consideration for whether the complaint adequately alleges material misrepresentations and scienter is the weight to afford the confidential informant (FE1's) allegations, which form the basis of the complaint. The district court "generally" discounted the allegations of FE1, and "significantly" discounted his allegations about Riverside's financial health, because in this circuit "courts must discount allegations from confidential sources." [7] *Six Flags*, 524 F. Supp. 3d at 524–25; *Pier 1*, 935 F.3d at 433 (quoting *Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 535 (5th Cir. 2008)). Under the heightened PSLRA pleading standard, courts must "weigh the strength of plaintiffs' favored inference in comparison to other possible inferences." *Shaw*, 537 F.3d at 535 (quoting *Higginbotham v. Baxter Int'l Inc.*, 495 F.3d 753, 757 (7th Cir. 2007)). This process is obstructed when the witness is anonymous, so courts must apply a discount to confidential witness allegations. [8] *Id.*

 **\*208** **[14]** **[15]** **[16]** **[17]** Discount does not mean unfettered discretion to discard. The degree of discounting depends on the circumstances involved. Courts may rely on assertions from confidential sources if the person is "described in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." *Owens*, 789 F.3d at 542 n.11 (quoting *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 352 (5th Cir. 2002)). [9] A court must consider the details in the description of the source and whether those details substantiate that the

source has the necessary knowledge. As with complaints more generally, the important assertions must be factual and not mere conclusory statements.

 [18]   Here, FE1 is described as "Six Flags International's Director of International Construction and Project Management" from May 2018 through September 2019. The complaint details that he was "responsible for overseeing the construction of the China parks and reporting internally on their progress," that he worked onsite at the Zhejiang location, travelled to Chongqing "to perform site inspections and check construction progress," and attended meetings with Six Flags and Riverside personnel. When confidential sources "consist of persons who from the description of their jobs were in a position to know at first hand the facts," and there is "convincing detail" to the information they provide, there is reason to credit the informants' reliability. *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 712 (7th Cir. 2008). Another factor in the Seventh Circuit opinion was that the informants were numerous, *id.*, but we consider the significance of FE1's reported role in the project to substitute for numbers. As another circuit held, "the weight accorded to anonymous sources will depend in large part on the level of detail with which they are described." *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 262 (3d Cir. 2009) (discussing the Seventh Circuit's *Tellabs* opinion). Indeed, the use of what would appear to be FE1's unique and significant corporate title makes us wonder just how unknown he is to the parties.

 [19]    [20]    [21]   While FE1 is only one source, the complaint's details about the responsibilities of his position are directly relevant to the events at issue in this case. Moreover, FE1's account is supported by at least some corroborating evidence — a photo of the Zhejiang site in April 2018 showing essentially no construction. Therefore, FE1's allegations should be discounted only minimally for his anonymity and lack of corroborating witnesses. [10] Our conclusion **\*209** that the discount here should be minimal is consistent with not only our court's precedent, but also with other circuits' conclusions when details about the confidential source support reliability. [11]

 [22]   In addition to the "general" discount it applied to FE1's global allegations, the district court also applied a "significant" discount to FE1's allegations about Riverside's financial health. *Six Flags*, 524 F. Supp. 3d at 524–25. The district court held that Plaintiff did not sufficiently plead FE1 would have personal knowledge of Riverside's internal finances or access to funding, so those required an even larger discount. *Id.*

The complaint, though, outlines that FE1 was responsible for "protecting Six Flags' brand by overseeing the construction ... and ensuring that Riverside was building the parks correctly and safely." Consequently, FE1 would have knowledge of Riverside's lack of payments to vendors, even if the reason for the default was not known. Moreover, the complaint alleges that in May 2018, FE1 attended a meeting in Beijing with the two Six Flags China Park presidents, where they informed FE1 that Riverside "did not have the money to pay for the additional construction drawings and the process had 'stalled out.' " It further alleges that FE1 had direct contact with Riverside personnel, where he raised concerns about the lack of construction. Finally, the complaint also alleges that FE1 wrote a letter in August 2019 to Six Flags' Senior Vice President, Human Resources, where he stated, among other grievances, that Riverside "made it clear that they have zero funds remaining," that it was "forcing abused employees to resign under duress," that it "owed nearly 3 months back pay," and that there was a "complete lack of monetary support from our own company (Six Flags)." Given FE1's stated role in the Company and contemporaneous details of his knowledge of Riverside's condition, there is enough here to conclude that FE1 had personal and relevant, even if not comprehensive, knowledge about Riverside's financial health.

Therefore, the complaint details enough about FE1's relationship to Riverside that his statements about its financial health should also be considered with only a minimal discount.

### *II. 2018 statements*

We now consider the statements Plaintiff alleges were materially misleading. We must first determine whether any statements are (1) protected by the forward-looking safe harbor. *See Lormand v. US Unwired*, 565 F.3d 228, 245 (5th Cir. 2009). For those that are not protected, we must then determine whether they were (2) material misrepresentations that were (3) stated with the

requisite scienter. *Id.* at 238–39. We address the statements chronologically, allowing us to consider the relevancy **\*210** of FE1's particular allegations at each point in time.

Plaintiff argues that Defendants knowingly made several materially misleading statements in 2018 about the scheduled opening dates of the China parks. For example, during the April 25, 2018, earnings call, Reid-Anderson stated, "right now, barring some other decision that's made, all our parks are progressing nicely towards their anticipated opening dates." On the July 25, 2018 earnings call, he confirmed, "[t]he timing of the parks remains exactly the same as previously discussed, there's no change on any of those." Further, on the October 24, 2018, earnings call, Barber stated the Zhejiang park opening had shifted back "[a] month or 2" from late 2019 to "the first of 2020," but listed the Chongqing parks and Nanjing parks as on-time, slated for 2020 and 2021, respectively.

## A. Forward-looking statements

 **[23]**   Defendants argue the projected park opening remarks are "forward-looking" statements that should receive protection under the PSLRA's safe harbor provision because they were accompanied by appropriately cautionary language. 15 U.S.C. § 78u-5(c)(1)(A). The district court agreed that the April and July 2018 earnings calls contained cautionary language adequate to protect any forward-looking statements. *Six Flags*, 524 F. Supp. 3d at 532. Under the safe harbor provision, a defendant is not liable if: (1) the statement is identified as forward-looking and "is accompanied by meaningful cautionary statements"; or (2) the statement is "immaterial" [12]; or (3) the plaintiff fails to plead that the statement "was made with actual knowledge ... that [it] was false or misleading." § 78u–5(c)(1)(A)–(B); *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 371 (5th Cir. 2004). "Each statement that benefits from the safe harbor must be addressed individually." *Lormand*, 565 F.3d at 245.

 **[24]**   We first address whether, as Plaintiff argues, the relevant 2018 statements were not forward-looking because each was a "mixed present/future statement [that] is not entitled to the safe harbor with respect to the part of the statement that refers to the present." *Spitzberg*, 758 F.3d at 691 (quotation marks and citation omitted). The statute defines "forward-looking" as:

> (A) a statement containing a projection of revenues, income ... or other financial items; (B) a statement of the plans and objectives of management for future operations ...; (C) a statement of future economic performance ...; (D) any statement of the assumptions underlying or relating to [any of the above].

§ 78u–5(i)(1). Plaintiff contends the statement, "right now, barring some other decision that's made, all our parks are progressing nicely towards their anticipated opening dates," refers to "then-present facts" rather than future predictions. In a similar case, the Second Circuit held the statement, "Vivendi Universal ... [has] a very strong balance sheet," was not protected even though the company stated in the next sentence, "we are very confident that we will meet the very aggressive growth targets we have set." *In re Vivendi, S.A. Secs. Litig.*, 838 F.3d 223, 246 (2d Cir. 2016). The court held there was "nothing prospective" about representing the company had a "very strong balance sheet," even though "some aspects of this statement could conceivably be characterized as forward-looking." *Id.* Similarly, Six Flags was asserting the parks were undergoing **\*211** sufficient construction to meet the deadlines. Although the deadline is a future projection, the crux of Plaintiff's fraud claim is that Defendants misled investors about the Company's *present* construction progress. This is a mixed present/future statement ineligible for safe harbor protection.

 **[25]**   We agree with Defendants, though, that some 2018 statements are forward-looking under Section 78u–5(c)(1)(A)–(B). A concrete plan with no commentary about present construction progress such as "three new parks in [Nanjing] China are expected to begin opening in 2021" or "those start to come online in Zhejiang ... [in] early 2020" are, as the statute requires, "statement[s] of the plans and objectives of management for future operations." § 78u–5(i)(1)(B). They are entitled to the safe

harbor protection if Defendants can show they were either accompanied by meaningful cautionary language or Plaintiff failed to plead Defendants' "actual knowledge" of their falsity.

A "meaningful" cautionary statement identifies "important factors that could cause actual results to differ materially from those in the forward-looking statement." § 78u-5(c)(1)(A)(i). Companies must disclose " 'substantive' company-specific warnings based on a realistic description of the risks applicable to the particular circumstances, not merely a boilerplate litany of generally applicable risk factors." *Southland*, 365 F.3d at 372 (citing H.R. Conf. Rep. No. 369, 104th Cong., 1st Sess. 31, 44 (1995)). [13]

The district court held the general cautionary statements at the beginning of each earnings call, and in the accompanying Form 10-Ks that are the annual report of a company's financial condition, were "too generic to constitute meaningful cautionary language." *Six Flags*, 524 F. Supp. 3d at 531–32. We agree. Both disclaimers are classic boilerplate cautions, unattached to individual forward-looking statements. In one precedent, for example, we concluded that the use of an identical disclaimer for each misrepresentation was a reason to consider all to be boilerplate. *Lormand*, 565 F.3d at 245. A similar example of boilerplate language was this disclaimer: "statements involve numerous risks, uncertainties and assumptions, and actual results could differ materially from anticipated results." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 694 (5th Cir. 2005).

However, the district court held that the 2018 earnings calls, and other sections of the Form 10-Ks, did contain appropriately "company-specific" risk statements. *Six Flags*, 524 F. Supp. 3d at 532. These included Reid-Anderson's commentary in April: "[international deals] sometimes take a long time to come to fruition," and in July: "[international contribution] has been lumpy historically, and what makes it lumpy is opening dates." [14] *Id.*

**\*212** We disagree that this is "meaningful" cautionary language that identifies "important factors that could cause actual results to differ materially from those in the forward-looking statement." § 78u-5(c)(1)(A)(i). In *Lormand*, we reversed the district court's grant of "blanket safe harbor protection" after it "erroneously neglected to address how each excluded statement (or portions of those statements) is specifically and meaningfully protected by the safe harbor." *Lormand*, 565 F.3d at 245. As in *Lormand*, the "cautionary" comments here were not connected to the forward-looking statements at issue — the cautionary comments came in response to different analysts' questions and were not offered unprompted. Further, neither comment addresses the actual risk at issue — that the parks might be significantly delayed or fail to ever open.

Although not protected by meaningful cautionary language, Defendants' forward-looking statements may still qualify for safe harbor protection if Plaintiff fails to plead facts demonstrating the statements were made with "actual knowledge" that they were misleading. § 78u-5(c)(1)(B); *Southland*, 365 F.3d at 371. We next examine why Plaintiffs have shown that (a) the 2018 statements (both forward-looking and not) were materially misleading and (b) Defendants made the statements with "actual knowledge" of their misleading qualities.

### B. Material misrepresentations or omissions

[26] To allege a material misrepresentation or omission as a basis of a securities fraud claim with sufficient particularity under Rule 9(b) and the PSLRA, the complaint must specify, among other things, each allegedly misleading statement and explain why it is misleading — "the so-called 'particularity' requirement." *Lormand*, 565 F.3d at 239; 15 U.S.C. § 78u–4(b)(1). For allegations regarding a statement made on information and belief, the plaintiff must "state with particularity all facts on which that belief is formed," *i.e.*, set forth a factual basis for such belief. § 78u–4(b)(1).

[27] The district court held that the complaint failed to plead adequately that Defendants made materially misleading statements about the China parks' projected opening dates. *Six Flags*, 524 F. Supp. 3d at 528–29. Plaintiff's complaint alleges that Defendants' timeline for opening the China parks was "impossible to meet based on the lack of progress to that point." The district court found that the complaint (1) "fail[ed] to plead any specific facts showing how or why the projected park openings

were impossible to meet," and (2) "rest[ed] on FE1's conclusory assertion that there was 'absolutely no way' Six Flags could meet its projections." *Id.* at 528. We disagree with this characterization of the pleadings.

The complaint contains several specific factual allegations from FE1 about the disastrous state of the China parks throughout 2018 that support the conclusion the parks would not open on schedule. For example, FE1 alleges that, as of May 2018, Riverside had not commissioned the "fundamental blueprints" necessary to begin construction of the park infrastructure, such as "roads, canals, pavilions, and the elaborate buildings." FE1 alleges he attended a May 2018 meeting in Beijing with senior members of the Six Flags China team, including the two China park presidents, where he was informed Riverside could not pay for the necessary construction drawings. FE1 recounts that Riverside attempted to start construction of **\*213** Zhejiang at that time based solely on "design drawings," which resulted in "no meaningful progress on the parks" other than digging holes and installing "certain pile foundations," some of which later needed to be re-installed. FE1 alleges that from "day one" of his time at Six Flags, Riverside was unable to pay vendors constructing the roller coasters and rides, which are "made to order and require years of lead time and planning," and that eventually every outside manufacturer had to "cease construction or find another buyer" for the rides. The complaint also includes a photograph of Zhejiang from April 2018 showing "almost no progress" had been made on the development scheduled to open in 19 months, alongside a comparison photo of Shanghai Disneyland 24 months before it opened.

Defendants argue, however, that FE1 has only pled "conclusory opinions" that do not adequately contradict the stated timeline. For example, they contend there is no basis in the complaint for a hypothetical five-year timeline for roller-coaster construction to apply to Six Flags' rides. They argue Plaintiff is incorrect to compare the Six Flags Zhejiang parks' timeline to that of the Disney and Universal resorts because those companies were constructing different types of parks.

Many of Six Flags' arguments, however, are about factual merits, not about plausibility of pleadings. Plaintiff has pled that FE1 previously held a position at a major Six Flags competitor, was responsible for overseeing the construction of the rides, and worked onsite in China to protect the Six Flags brand by ensuring Riverside was building the parks "correctly and safely." "[I]ndustry-specific and inherently fact-bound proposition[s] cannot be verified on the face of the pleadings." *Spitzberg,* 758 F.3d at 690. The complaint here adequately alleges FE1 would have knowledge of the required time to build a theme park; his job responsibilities were tied to that understanding. Any disagreements about the correct comparison timeline for roller-coaster construction are industry-specific questions not appropriate for the motion to dismiss stage.

Finally, the complaint concludes that Defendants' timeline for opening the parks was "impossible" to meet based on FE1's allegations regarding the China parks' lack of progress. Defendants take this a step further, though, and urge us to adopt "impossibility" as a *legal* standard for complaints under the PSLRA where allegedly misleading statements discuss future deadlines. Defendants argue that "[b]ecause those statements relate to future events that Plaintiff claims were 'impossible,' Plaintiff needed to plead 'specific facts that show how ... problems and difficulties necessarily precluded' Riverside from hitting projected park opening dates or developing new parks." For impossibility as the measure, Defendants cite *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.,* 880 F. Supp. 2d 1045, 1064 (N.D. Cal. 2012).[15] The district court agreed and held that Plaintiff's complaint failed because it **\*214** did not adequately "plead that the projected park openings were impossible to meet." *Six Flags,* 524 F. Supp. 3d at 529.

[28]  We reject that a plaintiff generally must plausibly plead future deadlines are categorically "impossible." A central reason for enactment of the PSLRA was to prevent "abusive, frivolous strike suits,"[16] not to "raise the pleading burdens ... to such a level that facially valid claims ... must be routinely dismissed." *ABC Arbitrage,* 291 F.3d at 354 (citations and quotation marks omitted). Requiring plaintiffs to make a plausible allegation that a company's timeline was "impossible" would be an excessively difficult burden at this point in litigation and would likely require investigation into those "industry-specific and inherently fact-bound proposition[s]" that are inappropriate at the pleading stage. *Spitzberg,* 758 F.3d at 690. The heightened requirements of the PSLRA are that a complaint give "reasons why [each] statement is misleading," and, for allegations made on information and belief, "state with particularity all facts on which that belief is formed." § 78u–4(b)(1). In this case, Plaintiff has fulfilled the statutory requirement by providing numerous factual allegations about inadequate construction to explain why a reassurance

like "our parks are progressing nicely towards their anticipated opening dates" is misleading, even if still theoretically possible (though highly unlikely) under the facts alleged.

Plaintiff has therefore met its burden to show the 2018 statements were material misrepresentations.

### C. Scienter

[29]  [30]  [31]  [32]  Under the heightened pleading requirement of the PSLRA, a complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." § 78u-4(b)(2). A complaint adequately pleads scienter by alleging facts that support the defendant acted with an "intent to deceive, manipulate, or defraud or severe recklessness." *Lormand*, 565 F.3d at 251 (quotation marks and citation omitted). In *Tellabs*, the Supreme Court explained the steps for examining scienter. First, we "accept all factual allegations in the complaint as true." *Tellabs*, 551 U.S. at 322, 127 S.Ct. 2499. We then consider the complaint's allegations in their entirety. *Id.* Third, a court must consider plausible inferences that both oppose and support a strong inference of scienter; the inference must be "cogent and compelling," not "merely 'reasonable' or 'permissible.' " *Id.* at 323–24, 127 S.Ct. 2499; *Shaw*, 537 F.3d at 533. "Where there are competing inferences that establish or negate the scienter requirement, a tie favors the plaintiff on a motion to dismiss." *Spitzberg*, 758 F.3d at 686 (quotation marks and citation omitted).

[33]  This circuit has yet to determine whether the safe harbor's scienter standard of "actual knowledge" for forward-looking statements encompasses severe recklessness. We agree with several other circuits that liability for a forward-looking statement must satisfy a more demanding standard than for current statements. Liability arises only upon proof of knowing falsity because the provision explicitly specifies that a defendant must have made the statement with "actual knowledge" of its falsity. *See, e.g.*, *Slayton v. Am. Exp. Co.*, 604 F.3d 758, 773 (2d Cir. 2010); *Avaya*, 564 F.3d at 274; *Miller v. Champion Enters., Inc.*, 346 F.3d 660, 672 (6th Cir. 2003). Therefore, the statements we have **\*215**  already identified as forward-looking are held to a higher scienter standard.

[34]  [35]  [36]  An important aspect of pleading scienter is establishing motive. "To demonstrate motive, plaintiffs must show concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged." *Shaw*, 537 F.3d at 543 (quotation marks and citation omitted). Plaintiff contends that Defendants were motivated by the significant bonuses they would receive if Six Flags hit the "Project 600" target EBITDA of $600 million by the end of 2018. Defendants argue incentive compensation plans usually are "not the types of motive that support a strong inference of scienter." *Abrams v. Baker Hughes, Inc.*, 292 F.3d 424, 434 (5th Cir. 2002). Even so, performance-based compensation can establish motive in circumstances "when the potential bonus is extremely high and other allegations support an inference of scienter." *Pier 1*, 935 F.3d at 431.

The complaint alleges Defendants were particularly incentivized in 2018 to increase high-margin international licensing deals to achieve the target EBITDA because revenue recognition occurred independently of the parks' long-term success. In *Barrie*, we held that a defendant's performance-based bonus of 175% of his base salary contributed to a strong inference of scienter. *Barrie v. Intervoice-Brite, Inc.*, 397 F.3d 249, 261–64 (5th Cir. 2005). Here, the complaint alleges Defendants were motivated to receive equity awards of 600% and 300% of their base salaries. In addition, unlike in *Pier 1* where the defendants' bonuses were "well out of reach," the complaint alleges Six Flags would have reached its EBITDA target if not for the $15 million downward revenue adjustment announced in February 2019. *Pier 1*, 935 F.3d at 431.

Defendants argue Six Flags' disclosure of the downward revenue revision for FY18 undermines any motive allegations because that disclosure was to Defendants' "own financial detriment." At the time, Defendants stated the delayed openings were caused by a "challenging macroeconomic environment" in China and reassured investors that "construction [wa]s continuing." The complaint, though, alleges that Defendants finally disclosed the delays and corresponding revenue adjustment in February 2019 because the Company had just faced its year-end audit. FE1 alleged that the claims that construction was continuing were "not

true." Here, the inference that Defendants were motivated throughout 2018 to hide the true nature of the parks' construction progress to achieve the target EBITDA is at least as strong as the inference that they were honest about the reasons for the announced delays. Under *Tellabs*, "a tie favors the plaintiff." *Lormand*, 565 F.3d at 254. The Seventh Circuit's *Tellabs* opinion correctly explained, "[t]he fact that a gamble — concealing bad news in the hope that it will be overtaken by good news — fails is not inconsistent with its having been a considered, though because of the risk a reckless, gamble." *Tellabs*, 513 F.3d at 710.

 [37]   Motive alone, though, is generally insufficient to support a strong inference of scienter. *Diodes*, 810 F.3d at 958. We therefore examine other relevant allegations. Defendants argue that FE1's numerous allegations about the disastrous state of the China parks do not support a strong inference of scienter because the complaint does not persuasively connect FE1's reports about the state of the China parks directly to Defendants. [17]   We have held that  **\*216**  for internal corporate reports *alone* to support an inference of scienter, there must be (1) "corroborating details regarding the contents of allegedly contrary reports, their authors and recipients," and (2) the reports must be connected to the executive "in a persuasive way." *Neiman v. Bulmahn*, 854 F.3d 741, 748 (5th Cir. 2017) (quotation marks and citations omitted).

Here, FE1's reports are described as "weekly presentations" containing details about the lack of infrastructure, lack of construction workers onsite, and lack of progress over "x number of days" in specific sectors of the parks. In *Neiman*, the damaging information was buried in reports and required executives to "parse through data" to glean the issues. *Id.* at 749. Here, though, FE1 alleges he prepared these presentations for Mark Kane (General Manager and Park President of Six Flags Zhejiang) and David McKillips (Senior Vice President of International Park Operations and President of Six Flags International). Further, he alleges McKillips directly related the presentations' content to Reid-Anderson and the Board of Directors. The complaint also alleges that FE1 compiled "master reports" containing information about the lack of construction progress for McKillips to present to Reid-Anderson and the Board.

 [38]    [39]   The collective weight of these scienter allegations is sufficient to support an inference that Defendants had "actual knowledge" their 2018 statements were misleading. [18]

### III. 2019 statements

During the February 2019 earnings call for the fourth quarter of 2018, Defendants updated investors that Six Flags had "performed a comprehensive review of our project timelines jointly" with Riverside and that the company expected each park to experience a roughly 12-month delay. That caused a $15 million downward revenue adjustment for the fourth quarter of 2018. Despite investor concerns about Riverside's funding abilities, Defendants assured investors that Riverside "continues to pay," that "the financing [for the parks] is in place," that the parks were "still progressing," and that construction was "ongoing as we speak." On the April 2019 call, Defendants confirmed "[t]here are no delays that we're aware of on any of the parks" and that investors could expect "[t]he same timing as we outlined on the fourth quarter call." On the July 2019 call, Reid Anderson reassured investors that construction was "progressing" and that he thought "the timetable that we described 180 days ago still holds right now." Finally, during the October 2019 call, Defendant Barber denied there was "any material change" in the timelines.

### A. Forward-looking statements

 [40]   As with the 2018 statements, Defendants argue that several, though not all, of the 2019 statements qualify as forward-looking  **\*217**  under Section 78u-5(c)(1). We disagree and hold that none are eligible for safe-harbor protection. The February 2019 statements about Riverside — such as that Riverside "continues to pay" for the parks' development and that the "financing is in place" — concern present information about Riverside's financial condition and ability to finance the parks. Similarly, the February 2019 statements about the new park deadlines are not forward-looking. Although in isolation an announcement about new opening dates might qualify as forward-looking, as was the case with several of the 2018 statements, these future deadlines were accompanied by reassurances about present progress towards those deadlines, *e.g.*, "our partner in China remains fully

committed to developing and opening these parks and construction is continuing." The identified statements imply the present construction progress was adequate to meet those deadlines, and the crux of the allegation about why it is misleading is also rooted in the present.

The question, then, is whether Plaintiff has pled with particularity that the 2019 statements (1) were materially misleading misstatements or omissions and (2) give rise to a strong inference of scienter. Because none are forward-looking, this standard is either an "intent to deceive, manipulate, or defraud or severe recklessness." *Lormand*, 565 F.3d at 251 (quotation marks and citation omitted); *see also* § 78u-4(b)(1)–(2).

### B. Material misrepresentations or omissions

[41]   The district court held Plaintiff failed to plead the February 2019 statements about Riverside's financial health were false or misleading, or contained actionable omissions, in part because FE1's allegations did not demonstrate whether he had sufficient insight into Riverside's financial condition to know if Defendants were actually being disingenuous. *Six Flags*, 524 F. Supp. 3d at 526–27, 529. Plaintiff argues that Defendants omitted "critical information regarding Riverside's financial condition and its ability to fund and develop the Six Flags China parks."

We conclude that the complaint adequately alleges Defendants' positive statements about Riverside contained actionable omissions about the company's true financial state. This court held in *Lormand* that "under Rule 10b-5, a duty to speak the full truth arises when a defendant undertakes a duty to say anything." 565 F.3d at 249 (quotation marks and citation omitted). "Once the defendants engaged in public discussions ... they had a duty to disclose a 'mix of information' that is not misleading." *Id.* at 248–49. In other words, when Defendants told investors that Riverside has "a lot of assets" and "continues to pay," and that their "financing [for the parks] is in place," Defendants were omitting crucial information about Riverside's numerous financial woes alleged by FE1. For example, FE1 alleges that Riverside was firing its employees, was underpaying its workers, had stopped construction, and had "zero funds" to finance the project. As we earlier concluded in Section I, Plaintiff has sufficiently alleged how FE1's job responsibilities would give him insight into Riverside's financial condition, such that his allegations should be considered with only a minimal discount.

[42]   Defendants argue the statements about "ongoing" construction "progressing" from the February, April, and July 2019 earnings calls were not misleading because the complaint "concede[s] that some construction was ongoing." The complaint acknowledges Riverside had "design drawings" for the Zhejiang and Chongqing parks, and FE1 stated "workers [were] assembling tubing for the waterpark." According **\*218** to the district court, "either construction was 'continuing' or 'ongoing,' or it was not," regardless of whether progress was "slower than FE1 or Plaintiffs expected." *Six Flags*, 524 F. Supp. 3d at 528.

[43]   The question, though, is whether Plaintiff has pled with particularity that the statements were misleading as a matter of law. A "disclosure required by the securities laws is measured not by literal truth, but by the ability of the statements to accurately inform rather than mislead prospective buyers." *Lormand*, 565 F.3d at 248. We cannot read Defendants' construction-progress statements in isolation. They must be read in the context of investors' expectations about the meaning of that progress: a worker hammering one nail per day may be literal "progress," but a reasonable investor would not view it as such. In addition to the numerous difficulties outlined during 2018, FE1 alleges that, in August 2019, he sent a letter to Kathy Aslin, Senior Vice President in Human Resources (who reported directly to Reid-Anderson), to express concern that the projects were "perhaps irreversibly off-track" and a "mess," and that he had "never seen such a poorly planned project set into motion in this industry." This is sufficient for the alleged misstatements from February, April, and July 2019 to satisfy the pleading standard.

[44]   By late 2019, however, Defendants' language had changed. According to the complaint, during the October 2019 earnings call, "Defendant Barber denied that there was 'any material change in the time line of China over the last 90 days.'" But in the full exchange on that call, Defendant Reid-Anderson admitted there was a "very high likelihood going forward that we will see changes in the timing of park openings" and that it was "unrealistic" to think the timelines would hold.

Therefore, we hold that the statements before October 2019 satisfy the pleading standard, but, because Defendants had adequately tempered their optimistic language by October, the later allegations do not.

### C. Scienter

**[45]** The next inquiry is whether Plaintiff has adequately pled scienter for the February, April, and July 2019 statements. Because none of the 2019 statements were forward-looking, Plaintiff need only allege that the statements show "severe recklessness." *See Lormand*, 565 F.3d at 251 (quotation marks and citation omitted). Plaintiff must adequately plead "highly unreasonable" conduct representing "an extreme departure from the standards of ordinary care." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 866 (5th Cir. 2003) (quotation marks and citation omitted).

**[46]  [47]** By February 2019, Defendants were unable to receive their bonuses because of the $15 million downward-revenue adjustment for Fiscal Year 2018. The loss of the opportunity to receive the extraordinary bonuses removes that pecuniary motive for the statements made after 2018. The "presence or absence of a pecuniary motive" is not dispositive, however, under the PSLRA. *Spitzberg*, 758 F.3d at 685 (citing *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 48, 131 S.Ct. 1309, 179 L.Ed.2d 398 (2011)). In *Spitzberg*, we held that "the need to substantiate the allegedly irresponsible statements [the defendants] had made previously" was relevant to determining whether making the statements was "severe recklessness." *Id.* at 686. Similarly, Defendants here may have lost their pecuniary motive but could still be plausibly motivated by a desire to save face regarding the parks.

**\*219** When combined with the additional circumstantial allegations, Plaintiff pleads enough to support a strong inference of scienter for these 2019 statements. The additional circumstantial allegations include FE1's August 2019 letter sent to the Human Resources Vice President about the disastrous state of the parks, FE1's regular reports prepared for McKillips, and FE1's allegations that construction was so non-existent "weeds [were] growing" on the theme park portion of the Zhejiang park in February 2019.

**[48]** In addition, Plaintiff also alleges the core operations theory of scienter, *i.e.*, that the China parks were so important to Six Flags' success that "misrepresented or omitted information at issue would have been readily apparent to the speaker." *See Diodes*, 810 F.3d at 959. Generally, "an officer's position with a company does not suffice" to infer scienter, but "special circumstances, taken together with an officer's position, may support a strong inference of scienter." *Id.* at 958–59 (quotation marks and citations omitted). Relevant factors that might "tip the scales" are: (1) the company's size; (2) whether the transaction at issue was "critical to the company's continued vitality"; (3) whether the misrepresented information "would have been readily apparent to the speaker"; and (4) whether "the defendant's statements were internally inconsistent with one another." *Id.* at 959. Defendants argue that none of these factors applies to Six Flags.

First, Six Flags is undoubtedly a large company, which undermines the "core operations" theory. Second, though, in contrast to Defendants' characterization that the China parks were just "3% of Six Flags' revenue," the company touted the international licensing deals as a "key growth driver" and projected they would increase EBITDA by 20 to 40% when the parks opened. The China parks were not critical to Six Flags' survival, but they were an important aspect of future growth prospects and EBITDA. Third, Defendants stated during the February 2019 earnings call that they had "performed a comprehensive review of our project timelines jointly with" Riverside, implying they knew details of the progress or its absence at the China parks. That distinguishes the facts here from those in *Diodes*, where the court considered that the company's relevant problems "could not have been readily apparent" to the corporate executives. *Diodes*, 810 F.3d at 959. The "core operations" allegations here are not adequate on their own, but contribute to the inference of scienter, because a court considers "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *See Tellabs*, 551 U.S. at 323, 127 S.Ct. 2499 (emphasis in original).

Case 3:20-cv-00408-K    Document 47-1    Filed 02/10/23    Page 28 of 32    PageID 845

[49]    [50]    Taken together, "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged" throughout 2019. [19] *See id.* at 324, 127 S.Ct. 2499.

**\*220** *IV. Corporate optimism and puffery*

[51]    [52]    Defendants argue, and the district court held, that many of the operative statements in the complaint were simply expressions of corporate optimism and therefore inactionable as a matter of law. *Six Flags*, 524 F. Supp. 3d at 533. "[G]eneralized positive statements about a company's progress are not a basis for liability." *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 419 (5th Cir. 2001). Statements are non-actionable puffery when they are "of the vague and optimistic type ... and contain no concrete factual or material misrepresentation." *Southland*, 365 F.3d at 372 (quotation marks and citation omitted).

[53]    Some of the general, abstract statements about the prospect of future parks, such as, "[w]e will not be stopping at 10 parks," and "we're already at 11, I think 20 parks is possible," are vague, optimistic generalizations that would not convey to a reasonable investor such aspirations are guaranteed or even likely. We have previously found, for example, that statements that a pharmaceutical drug under development was "fast-acting" and an "improved formulation" were mere puffery, even though the commercial viability of the drug was material. *Nathenson*, 267 F.3d at 419.

[54]    On the other hand, other identified statements were made in the context of announcing projected park opening dates and are therefore too specific to categorize as general corporate optimism. Statements such as, "[t]he timing of the parks remains exactly the same as previously discussed" or that the "parks are progressing nicely" are not "vague" or "generalized, positive statements," because they confirmed the projections previously provided by Defendants. *Southland*, 365 F.3d at 372. They convey precise information on which investors are likely to rely when valuing corporations, particularly because the revenue recognition for the parks depended on those projected opening dates. Statements describing construction as "continuing" and "progressing" in the context of confirming the park timelines are not puffery for the same reason.

We disagree with the district court as to some of the statements that it labeled as inactionable puffery. We do not undertake the task of grouping all the contested statements as either puffery or not, but we do hold that the district court was applying too broad a definition to that concept.

*V. Revenue recognition*

[55]    The complaint also alleges that Six Flags improperly recognized revenue on the China parks in its financial statements and misstated the company's compliance with GAAP. GAAP allowed Six Flags to recognize revenues related to its relationship with Riverside only if there was "progress toward completion of [Riverside's] performance obligation[s]," *i.e.*, Riverside's progress toward meeting the China parks' publicly stated opening dates, and payment of licensing fees to Six Flags.

The district court held that Plaintiff failed to plead the accounting violations with requisite specificity, including "how much revenue was overstated, how that amount was determined, and why the defendants were required to report revenue differently." *Six Flags*, 524 F. Supp. 3d at 529. Plaintiff argues, though, that because Six Flags' statements regarding the scheduled opening dates for the parks were false, any recognized revenue during those quarters must have also been erroneous. Further, Plaintiff argues the $15 million downward revenue adjustment in the fourth quarter of 2018 is at least one example of a specific amount and time-period that required an acknowledged accounting adjustment due to overstatement.

**\*221**    By themselves, such allegations of improper revenue recognition might not satisfy the pleading demands of the PSLRA. In this case, though, we have already held that Plaintiff has sufficiently pled that Defendants knowingly made false and misleading statements regarding the progress and opening dates of the China parks. It is not unreasonable, then, to infer that Defendants also may have overstated the revenue that depended on the projected opening dates. The crux of the accounting claims depend on whether the projected park opening dates were realistic. As in *Barrie*, "[b]ecause the accounting questions in this case are disputed, dismissal was not appropriate." 397 F.3d at 257.

Defendants argue that Plaintiff failed to allege "whether, how, and to what extent alleged delays at that time required negative revisions." On the other hand, the Six Flags financial statements did not break out the revenue from sponsorship and international agreements every quarter (although it did report percentage increases and decreases between periods). [20] Other than when Defendants shared additional information regarding revenue from international deals — such as the negative adjustment in 2018 — Plaintiff could not have known the exact amounts that were being overstated. Despite this deficiency, however, the complaint here does allege "how [the] adjustments were improper in terms of reasonable accounting practices" and "how those adjustments were incorporated into [the] financial statements." *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 522 (5th Cir. 1993).

We hold that the complaint adequately alleges that Six Flags improperly recognized revenue on the China parks in its Class Period financial statements due to Defendants' misleading statements regarding the parks' construction progress and the admission of $15 million in overstated revenue in 2018.

### VI. Pleading a violation of Section 20(a)

Section 20(a) of the Securities Act imposes liability on "[e]very person who, directly or indirectly, controls any person liable for violations of the securities laws." *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 146, 131 S.Ct. 2296, 180 L.Ed.2d 166 (2011) (quotation marks and citation omitted). To allege liability against Reid-Anderson and Barber, the alleged "control persons" of Six Flags under Section 20(a), the plaintiffs must allege a "primary violation" of Section 10(b). *See Pier 1*, 935 F.3d at 429. Because we reverse the district court's judgment with respect to the false and misleading statements and scienter allegations for many of the statements, its judgment regarding control person liability with respect to those statements is also reversed. *See Spitzberg*, 758 F.3d at 680 n.1. We remand to consider whether the complaint adequately alleges a Section 20(a) claim.

### VII. Post-Judgment Motion for Amendments to Complaint

 **[56]**   The district court denied Plaintiff's post-judgment motion to amend its complaint. We review a "district court's denial of [a] Rule 59(e) motion [to amend] for abuse of discretion, in light of the limited discretion of Rule 15(a)." *Schiller*, 342 F.3d at 566 (quotation marks and citation omitted). Because we conclude that Plaintiff sufficiently pled its claims for securities fraud, the context for the motion to amend the complaint has significantly changed. We therefore do not consider  **\*222**  whether the district court abused its discretion by denying that motion.

\* \* \*

We REVERSE and REMAND for further proceedings consistent with this opinion.

**All Citations**

58 F.4th 195

## Footnotes

1        The first park was called Six Flags over Texas, opening in 1961 between Dallas and Fort Worth. Its name refers to the flags of the countries that had sovereignty over Texas, starting with Spain, then France, Mexico, the Republic of Texas, the United States, the Confederacy, and the United States again. Claude Cox, *Six Flags Over Texas*, 5 NEW HANDBOOK OF TEXAS 1069 (1996). "Texas" is not part of the name of a park outside of that state, but six remains the number of flags irrespective of the locale's vexillology.

The parties identify the "Class Period" in their pleadings as being from April 24, 2018, to February 19, 2020.

The complaint uses "he" and "his" in connection with FE1, without confirming that FE1 is male. At oral argument, counsel for the Plaintiff stated that FE1 was a male employee.

As permitted under U.S. Generally Accepted Accounting Principles ("GAAP"), Six Flags recognized revenue for the China parks based on projected future revenues under the terms of the Company's partnership agreements with Riverside. This meant that when the parks were under construction, Six Flags recognized pro rata amounts as revenue each quarter. A delay in the opening dates of the parks therefore required the company to adjust the revenue recognition downward to accommodate the extended project timeline.

In May 2021, Six Flags disclosed, in a separate lawsuit, that it had received a subpoena from the SEC in February 2020, "requesting documents regarding Six Flags' partnership with Riverside" and "the development and operation of Six Flags-branded parks in China and the negative revenue adjustment of $15 million in the fourth quarter of 2018."

The district court held that Plaintiff "fail[ed] to challenge the inactionability of numerous statements" and therefore waived its opposition to those arguments. *Six Flags*, 524 F. Supp. 3d at 525. Plaintiff, though, argues its Opposition "squarely addressed these issues." We agree with Plaintiff that the Opposition adequately addressed Defendants' arguments even if it did not expressly cite every relevant statement in the complaint.

Though Plaintiff fully briefs why the district court improperly discounted FE1's allegations, there is no argument about why this conclusion was wrong as to FE2. "Failure adequately to brief an issue on appeal constitutes waiver of that argument." *Roy v. City of Monroe*, 950 F.3d 245, 251 (5th Cir. 2020) (quotation marks and citation omitted). Plaintiff has therefore waived this issue as to FE2.

Although the Supreme Court in *Tellabs* only discussed the PSLRA's heightened pleading requirement in the context of scienter when it held courts "must consider, not only inferences urged by the plaintiff ... but also competing inferences rationally drawn from the facts alleged," the PSLRA imposes a particularity requirement on all allegations, whether offered in support of a statement's falsity or a defendant's scienter. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007); 15 U.S.C. § 78u–4(b)(1), (b)(2). The analysis regarding the discount of confidential witnesses' allegations therefore applies when evaluating both material misrepresentations and scienter.

When we have discussed discounting allegations by confidential sources, it is usually in circumstances where the person's credentials are less clear, or the relevance of the person's job is more attenuated to the allegations, than is the case here. For example, in *Shaw*, this court discounted the allegations of several confidential sources because the plaintiffs "generally fail[ed] to provide sufficient details about their sources to credit their statements," and discounted one source's statement in particular because he was "not identified sufficiently by his title, work location, or dates of employment." *Shaw*, 537 F.3d at 537–38. In *Pier 1*, the court discounted witnesses' statements because the plaintiffs "fail[ed] to tie the[ ] statements to the alleged fraud" and because the witnesses "[did] not relate any interaction with [the defendants]." *Pier 1*, 935 F.3d at 434 (quotation marks and citation omitted).

Of course, a confidential witness may be adequately described but still fail to establish the falsity of a statement or to give rise to a strong inference of scienter. Nonetheless, as another circuit noted, "for analytical purposes, it is important to distinguish deficiencies relating to the content of allegations from those relating to their form." *Avaya, Inc.*, 564 F.3d 242, 263 n.33.

"In the case of confidential witness allegations, we apply [the particularity] requirement by evaluating the 'detail provided by the confidential sources, the sources' basis of knowledge, the reliability of the sources, the corroborative nature of other facts alleged, including from other sources, the coherence and plausibility of the allegations, and similar indicia.' " *Avaya, Inc.*, 564 F.3d at 263 (quoting *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 147 (3d Cir.

Case 3:20-cv-00408-K    Document 47-1    Filed 02/10/23    Page 31 of 32    PageID 848

2004)). "If anonymous source allegations are found wanting with respect to these criteria, then we must discount them steeply." *Id.*; *See also Yates v. Municipal Mortg. & Equity, LLC,* 744 F.3d 874, 885–86 (4th Cir. 2014).

Defendants do not argue any statements were immaterial.

The 2018 statements were made orally on earnings calls. Oral statements can qualify for the safe harbor if

(i) the statement is accompanied by a cautionary statement that the 'particular' oral statement is forward-looking and that actual results could differ materially (essentially a formality as to the form of the statement); (ii) the statement is accompanied by an oral statement that additional information that could cause actual results to differ materially is contained in a readily-available written document; (iii) the statement identifies the document or portion thereof containing the additional information; and (iv) the identified document itself contains appropriate cautionary language.

*Southland,* 365 F.3d at 372 (citing 15 U.S.C. §§ 77z–2(c)(2), 78u–5(c)(1) (1996)).

Defendants did not highlight any specific risk statements other than the generic opening statement on the October 24, 2018, earnings call and generic language from the February 2018 Form 10-K.

In *Juniper*, plaintiffs alleged Juniper's yearly revenue and operating margin growth forecasts were unattainable; the court, though, held plaintiffs' complaint failed because it did not show why alleged problems "necessarily" precluded Juniper from reaching the growth projected targets. *Juniper,* 880 F. Supp. 2d at 1064. The *Juniper* court, though, relied on *Ronconi v. Larkin,* 253 F.3d 423, 434 (9th Cir. 2001), where dismissal of a complaint under the PSLRA was affirmed because plaintiffs did not adequately allege "what the [company's] 'serious operational problems' were ... and why these 'difficult problems' decreased revenues." *Ronconi,* 253 F.3d at 434; *Juniper,* 880 F. Supp. 2d at 1064. This contrasts with the complaint in this case, where numerous specific, serious operational problems are alleged.

A "strike suit" is "[a] suit (esp. a derivative action), often based on no valid claim, brought either for nuisance value or as leverage to obtain a favorable or inflated settlement." BLACK'S LAW DICTIONARY 1572 (9th ed. 2009).

As stated in Section I, *supra*, FE1's allegations should only be minimally discounted, because his job description and articulated responsibilities were directly relevant to the events at issue in this case.

Although Defendants argue Plaintiff has not met its burden because Plaintiff did not allege that FE1 "had any contact with the Defendants," *Neiman* directs that the reports need to be connected to Defendants only in a "persuasive" way. *Neiman,* 854 F.3d at 748. As explained earlier, the PSLRA was enacted, in part, "to prevent abusive, frivolous strike suits," but not to "raise the pleading burdens ... to such a level that facially valid claims ... must be routinely dismissed." *ABC Arbitrage,* 291 F.3d at 354 (citations and quotation marks omitted). A confidential witness does not need to be a fly on every relevant wall — or directly deliver every relevant presentation — to plead allegations supporting an inference of scienter.

Plaintiff also urges us to consider the "[n]umerous sudden executive resignations and departures" that occurred around this time in 2019 and early 2020 as supportive of a strong inference of scienter. The problem is that "fraud cannot be proved by hindsight," and executive resignations are "unavailing as proof" of a commission of fraud. *Southland,* 365 F.3d at 383. Indeed, in one case we found that "the successive resignations of key officials, as the district court stated, is more likely probative only of the fact that the company was failing." *Rosenzweig,* 332 F.3d at 867. Although Plaintiff has alleged adequate facts to support a strong inference of scienter for the highlighted statements, we hold that the executive departures do not contribute to a strong inference of scienter.

*E.g.*, in July 2018, Defendants reported "a 9 percent increase in sponsorship, international licensing and accommodations revenue."

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.